# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-10142

United States Court of Appeals
Fifth Circuit

**FILED**

March 18, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff – Appellee

v.

JASON DVORIN,

Defendant – Appellant

----------------------------

CONSOLIDATED WITH 15-10183

UNITED STATES OF AMERICA,

Plaintiff

v.

JASON DVORIN,

Defendant

MINDY SAUTER,

Interested Party – Appellant

Appeals from the United States District Court
for the Northern District of Texas

Before PRADO, OWEN, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

No. 15-10142 Cons. w/ No. 15-10183

This is an appeal from the retrial of defendant Jason Dvorin, who was convicted of one count of conspiracy to commit bank fraud.  On appeal, Dvorin contends the district court erred by refusing to give certain requested jury instructions, excluding certain admissible evidence but admitting other inadmissible evidence, failing to adequately sanction the government for prosecutorial misconduct, and failing to dismiss the forfeiture notice in his indictment due to prosecutorial vindictiveness.  Consolidated with Dvorin's appeal is the appeal of Mindy Sauter, who prosecuted Dvorin during his first trial.  Sauter appeals the district court's findings that she committed *Giglio*, *Brady*, and *Napue* violations.[1]  For the reasons explained below, we VACATE the district court's judgment of forfeiture and AFFIRM on all other grounds.

## I. Background

Jason Dvorin was a business customer of Pavillion Bank ("Pavillion") with multiple accounts and loans collateralized by vehicles and oil-field equipment.  To alleviate his periodic cash-flow issues, Dvorin brought checks to Pavillion's executive vice president, Chris Derrington, that neither man expected would clear.  Derrington nonetheless processed the checks, giving Dvorin access to the face value of the check until the checks were returned.  This arrangement operated as an unofficial line of credit.  Dvorin and Derrington maintained this arrangement from 2005 through December of 2010, during which time the bank charged Dvorin more than $19,000 in overdraft fees.

The arrangement continued for five years, in part because Dvorin was able to periodically deposit large, legitimate payments into his accounts.  Ultimately, however, bank auditors discovered the scheme.  In 2012, the

---

[1] *Giglio v. United States*, 405 U.S. 150 (1972); *Brady v. Maryland*, 373 U.S. 83 (1963); *Napue v. Illinois*, 360 U.S. 264 (1959).

government indicted defendant Dvorin on one count of conspiring to commit bank fraud. The superseding indictment alleged that between 2005 and December 2010, Dvorin and Derrington engaged in a scheme in which they deposited checks in Dvorin's account knowing the deposited checks would not clear. The indictment did not contain a forfeiture count.

After a two-day trial, a jury found Dvorin guilty. During trial, the government elicited testimony from Derrington, who had pleaded guilty to conspiring to commit bank fraud and was awaiting sentencing. Derrington explained that he had cooperated with the government during its investigation, and that he was testifying in the hope that he would obtain some leniency in his sentencing. The prosecutor asked Derrington whether he had received any promises from the government in exchange for his testimony, and Derrington responded that he had not. The court sentenced Dvorin to 24 months of imprisonment and ordered $111,639.73 in restitution.

Dvorin appealed, and we set the case for oral argument. While preparing for oral argument, the government's appellate counsel discovered that the trial prosecutor, Mindy Sauter, had failed to disclose Derrington's sealed plea agreement supplement to Dvorin's counsel. The plea agreement supplement stated, in relevant part, that, "[i]f in its sole discretion, the government determines that the defendant has provided substantial assistance in the investigation or prosecution of others, it will file a motion urging sentencing consideration for that assistance." The government produced the supplement to Dvorin's counsel and agreed to an order vacating Dvorin's conviction and remanding the case for a new trial.

On remand, the district court sua sponte issued a show cause order in which it requested that the government's counsel file a pleading addressing why sanctions should not be imposed for Sauter's failure to disclose Derrington's plea agreement supplement and Sauter's permitting Derrington

3

to falsely testify that the government had not made him any promises. The district court held an evidentiary hearing in connection with the show cause order, and thereafter made preliminary findings that Sauter had violated *Brady* and *Giglio* by failing to turn over Derrington's plea agreement supplement. The district court also concluded that Sauter had violated *Napue* by permitting Derrington to testify falsely regarding the promises the government made him. The district court found that Sauter did not act in "bad faith," but "exhibited a reckless disregard for her duties and conducted the proceedings in an irresponsible manner." The district court declined to make a decision regarding the propriety of sanctions at that time.

While the sanctions issue was pending, the same U.S. Attorney's Office in which Sauter worked assigned a new prosecution team to handle Dvorin's new trial. The new prosecutors filed a second superseding indictment in which they included a forfeiture count for the first time. Dvorin moved to dismiss the forfeiture count on the basis of prosecutorial vindictiveness and judicial estoppel, but the district court denied the motion. Dvorin was tried a second time and the jury once again convicted Dvorin of conspiring to commit bank fraud. The district court then imposed a new sentence of 18 months of imprisonment, two years of supervised release, and $110,939.73 in restitution. The court also entered a forfeiture judgment in the amount of $91,239.73. The district court declined to impose sanctions based on Sauter's prosecutorial misconduct, but formally adopted as final its substantive findings that Sauter committed *Brady*, *Giglio*, and *Napue* violations.

Dvorin and Sauter filed separate appeals that have been consolidated. Dvorin's appeal is a direct appeal from a judgment in a criminal case. Sauter appeals the district court's reputational findings against her under *Walker v. City of Mesquite*, 129 F.3d 831, 832–33 (5th Cir. 1997) (holding that an

No. 15-10142 Cons. w/ No. 15-10183

attorney's challenge to a district court's reprimand and finding of misconduct present a reviewable appellate issue).

## II. Discussion

Dvorin appeals his conviction, asserting that the district court erred in: (1) denying his request for an apparent-authority jury instruction; (2) denying his request for a special unanimity jury instruction; (3) overruling his objections under Federal Rules of Evidence 701 and 704 to the government counsels' and witnesses' use of the terms "fraud," "fraudulent check," or "conspiracy"; (4) excluding extrinsic evidence of and cross-examination regarding the court's findings that Derrington testified falsely in a prior proceeding; (5) declining to award sanctions for prosecutorial discovery misconduct; (6) admitting the testimony of Chase Bank representative Arthemis Lindsay despite the government's failure to timely designate Lindsay as a possible witness on its witness list; and (7) permitting the government to add a forfeiture count to the second superseding indictment before the second trial and entering a forfeiture judgment at sentencing without having a jury find the facts essential to that judgment. Sauter appeals, contending that the district court erroneously found that she violated *Brady*, *Giglio*, and *Napue* and acted "recklessly" by failing to timely disclose Derrington's plea agreement supplement. We consider each challenge in turn.

*A. Failure to Give Adequate Jury Instructions*

Dvorin contends the district court erred in refusing to charge the jury with an apparent-authority instruction and a special unanimity instruction. We review a district court's refusal to give a defensive jury instruction for an abuse of discretion. *See United States v. Salazar*, 751 F.3d 326, 330 (5th Cir. 2014) (citing *United States v. Webster*, 162 F.3d 308, 321–22 (5th Cir. 1998)).

> A refusal to give a requested instruction constitutes reversible error only if the proposed instruction (1) is

substantially correct, (2) is not substantively covered in the jury charge, and (3) pertains to an important issue in the trial, such that failure to give it seriously impairs the presentation of an effective defense.

*Id.* (quoting *Webster*, 162 F.3d at 322).

### 1. Apparent-Authority Instruction

During Dvorin's trial, Dvorin attempted to create reasonable doubt regarding his "intent to defraud" by showing that he relied on Derrington's apparent authority to approve his checks. Dvorin thus requested that the district court give the following instruction: "In order to prove that the defendant had the intent of tricking the bank, the government must show that the defendant did not rely on the apparent authority of one or more bank officials."

Rather than insert Dvorin's proposed apparent-authority instruction, the court largely accepted Dvorin's proposed good faith instruction:

> The word "willfully" . . . means that the act was committed voluntarily and purposely, with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law. A defendant does not act willfully if he believes in good faith that his conduct does not violate the law. This is so even if that belief is objectively unreasonable.

The district court also instructed the jury that "[o]fficers, directors, or other employees of a financial institution cannot validate a fraud on the institution. Therefore, the knowledge of bank fraud by officers, directors, or other employees of the institution is not a defense to the charge of bank fraud." Dvorin insists that the charge did not adequately address his apparent-authority defense because the good faith instruction was abstract rather than specific to the facts presented by Dvorin's defense, and further argues that the district court's instruction regarding an official's inability to validate a fraud

6

undermined his apparent-authority defense.  The government counters that the district court did not err because the court's charge substantially and accurately covered the content of the proposed instruction.

We conclude that the district court did not err in refusing to instruct the jury on apparent authority because the district court's good faith instruction makes clear that the government must prove beyond a reasonable doubt that Dvorin acted with the specific intent to violate the law.  *See United States v. Aubin*, 87 F.3d 141, 147–48 (5th Cir. 1996) (holding that the district court's good faith instruction adequately preserved the defendant's ability to argue that he relied on the apparent authority of the bank official, such that an agency instruction was not necessary in spite of the court's instruction regarding an official's inability to validate a fraud on the bank).  This instruction preserved Dvorin's ability to argue that he had a good faith belief that the bank authorized Derrington to enter into the check-kiting arrangement with Dvorin, and in fact, Dvorin's attorney made this argument during trial.  The jury simply rejected Dvorin's theory.  Because the court's charge substantially covered the content of Dvorin's proposed instruction, we hold that the district court did not err in refusing to instruct the jury specifically on Dvorin's apparent-authority defense.

2.  Special Unanimity Instruction

Dvorin also asserts that the district court's refusal to give the jury a special unanimity instruction was error.  The district court instructed the jury using a general unanimity instruction, which read: "To reach a verdict, whether it is guilty or not guilty, all of you must agree.  Your verdict must be unanimous on count one of the indictment."  The district court also gave the Fifth Circuit pattern jury charge on multiple conspiracies.[2]  Dvorin requested

---

[2] This instruction reads:

that the district court add an instruction to the effect that the jury must unanimously find guilt as to the same conspiracy if "you find that the government's proof tends to show that the defendant was actually engaged in more than one conspiracy."

The Sixth Amendment requires that a jury unanimously agree upon all elements of the offense. *United States v. Gipson*, 553 F.2d 453, 456 (5th Cir. 1977); *see also* FED. R. CRIM. P. 31(a). "In the routine case, a general unanimity instruction will ensure that the jury is unanimous on the factual basis for a conviction, even where an indictment alleges numerous factual bases for criminal liability." *United States v. Holley*, 942 F.2d 916, 925–26 (5th Cir. 1991) (quoting *United States v. Beros*, 833 F.2d 455, 460 (3d Cir. 1987)). However, such an instruction is insufficient if "there exists a 'genuine risk that the jury is confused or that a conviction may occur as the result of different jurors concluding that a defendant committed different acts.'" *Id.* at 926 (quoting *United States v. Duncan*, 850 F.2d 1104, 1114 (6th Cir. 1988)). Generally, a special unanimity instruction is not necessary where an indictment charges a conspiracy because "the crux of a conspiracy charge . . . [is] [t]he defendant's voluntary agreement with another or others to commit an offense." *United States v. Dillman*, 15 F.3d 384, 391 (5th Cir. 1994) (emphasis

---

You must determine whether the conspiracy charged in the indictment existed and, if it did, whether the defendant was a member of it. If you find that the conspiracy charged did not exist, then you must return a not guilty verdict, even though you find that some other conspiracy existed. If you find that a defendant was not a member of the conspiracy charged in the indictment, then you must find that defendant not guilty, even though that defendant may have been a member of some other conspiracy.

omitted); *see also United States v. Narviz-Guerra*, 148 F.3d 530, 535 (5th Cir. 1998).

Although Dvorin argues that the jury may have found multiple conspiracies, we conclude that this case falls within the general rule. The charged conspiracy involved the same course of conduct between the same two co-conspirators at the same bank over a period of five years. The court's instruction regarding multiple conspiracies makes clear that the jury had to unanimously find Dvorin guilty of the single conspiracy charged in count one of the indictment; where a defendant is charged with one conspiracy, a special unanimity instruction is *not* required.  *See United States v. Royal*, 972 F.2d 643, 648–49 (5th Cir. 1992) (holding that the district court did not err in refusing to give a special unanimity instruction where the court's multiple-conspiracy instruction reflected that the defendant was charged with only one conspiracy in the indictment); *see also United States v. Musacchio*, 590 F. App'x 359, 363 (5th Cir. 2014) (per curiam), *aff'd. on other grounds*, 136 S. Ct. 709 (2016); *United States v. Mason*, 736 F.3d 682, 684 (5th Cir. 2013) (denying petition for rehearing); *United States v. Creech*, 408 F.3d 264, 268–69 (5th Cir. 2005).  Accordingly, we hold that the district court did not abuse its discretion in declining to charge the jury with Dvorin's proposed special unanimity instruction.

## B. Prejudicial Use of the Word "Fraud"

Dvorin's next point of error concerns the district court's allowing, over his objection, what Dvorin characterizes as inadmissible testimony by a lay witness or by the government's expert regarding Dvorin's mental state. For instance, Alan Turner, the government's expert, along with other lay witnesses, described instruments submitted to Pavillion as "fraudulent checks," referred to the scheme as fraudulent, and referred to Dvorin's arrangement with Derrington as a "conspiracy."  Dvorin contends that this

evidence is inadmissible under Federal Rules of Evidence 701 and 704, which prohibit, respectively, certain lay opinion testimony and expert testimony regarding a defendant's mental state that constitutes an element of the crime charged.  We review a trial court's evidentiary ruling for an abuse of discretion. *United States v. Hernandez-Guevara*, 162 F.3d 863, 869 (5th Cir. 1998).  "Such review is necessarily heightened in a criminal case, however, which demands that evidence be strictly relevant to the particular offense charged."  *Id.* (alterations omitted) (quoting *United States v. Hays*, 872 F.2d 582, 587 (5th Cir. 1989)).

While it would be preferable to avoid a term like "fraud" in this situation, we conclude that, in context, the term's use meant "worthless" and was not a direct reference to Dvorin's mental state.  It does not appear that any witness directly opined on the ultimate issue of Dvorin's mental state, whether as a lay witness or an expert, such that Rule 701 or 704 would bar the testimony.  *See United States v. Speer*, 30 F.3d 605, 610 (5th Cir. 1994) ("Rule 704(b) is not strictly construed and prohibits only a direct statement of the defendant's intent."); *United States v. Owens*, 301 F.3d 521, 527 (7th Cir. 2002) (concluding that the district court's allowance for an expert to use the phrase "misleading and fraudulent" was not error where the expert never commented directly on the defendant's state of mind (citing 29 CHARLES ALAN WRIGHT & VICTOR JAMES GOLD, FEDERAL PRACTICE & PROCEDURE § 6285, at 395 (1997) ("Rule 704(b) usually bars only a direct statement that defendant did or did not have the required mental state."))).  Accordingly, we hold that the district court did not abuse its discretion in admitting testimony referring to "fraudulent checks," "fraud," or "conspiracy."

*C. Admissibility of the District Court's Findings that Derrington Gave False Testimony*

No. 15-10142 Cons. w/ No. 15-10183

Dvorin contends that the district court erred in excluding evidence and prohibiting cross-examination on the subject of the court's tentative finding that Derrington had rendered false testimony regarding his plea agreement with the government during Dvorin's first trial.  At the second trial, the government filed a motion in limine seeking to preclude Dvorin's counsel from questioning Derrington regarding whether he committed perjury during the first trial and whether the trial court made findings regarding his truthfulness during the first trial.  The district court permitted Dvorin's counsel to question Derrington about his answers to the questions that were asked of him during the first trial and whether he answered those questions truthfully, but would not allow him to question or introduce evidence regarding the district court's findings.  Dvorin asserts that the district court's ruling disallowing extrinsic evidence of and cross-examination regarding its findings as to Derrington's truthfulness in the first trial violated the Confrontation Clause of the Sixth Amendment and Federal Rules of Evidence 608 and 403.[3]

"We review alleged violations of a defendant's Sixth Amendment confrontation right de novo[,]" but "[s]uch claims . . . are subject to harmless error review."  *United States v. Skelton*, 514 F.3d 433, 438 (5th Cir. 2008) (citing *United States v. Bell*, 367 F.3d 452, 465 (5th Cir. 2004)).  Absent a constitutional violation, we review a district court's evidentiary decisions and limitations on cross-examination for an abuse of discretion, which requires the

---

[3] Federal Rule of Evidence 608(b) prohibits the use of extrinsic evidence to prove specific instances of conduct in order to attack or support a witness's character for truthfulness. Dvorin argues that extrinsic evidence of the district court's findings was admissible under Rule 608(b) because the findings were offered for the purpose of showing bias—not Derrington's character for truthfulness.  Because we conclude that the district court did not violate Dvorin's right to confrontation under the Sixth Amendment, and properly exercised its discretion to exclude otherwise admissible evidence under Rule 403, we need not address the admissibility of the district court's findings under Rule 608(b).

defendant to show that the district court's evidentiary rulings were clearly prejudicial. *Id.*

"[T]he Confrontation Clause does not guarantee defendants cross-examination to whatever extent they desire." *Bigby v. Dretke*, 402 F.3d 551, 573 (5th Cir. 2005). The right to confrontation focuses, fundamentally, on whether the district court's exclusion "significantly undermined fundamental elements of the defendant's defense." *United States v. Scheffer*, 523 U.S. 303, 315 (1998). The circumstances of this case do not permit the conclusion that Dvorin's ability to put on his defense was undermined by the district court's holding. The only evidence Dvorin was deprived of was the fact that the district court made tentative findings that Derrington's prior testimony was not truthful, and the district court was within its right to impose limits on Dvorin's cross-examination of Derrington based on the prejudice that would result from the jury learning of the district court's findings. *See Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Accordingly, we hold that the district court did not violate Dvorin's Sixth Amendment right in excluding evidence of or cross-examination regarding the district court's tentative findings.

Similarly, the district court did not err in excluding this evidence under Federal Rule of Evidence 403. *Cf. Stevens v. United States*, 306 F.2d 834, 838 (5th Cir. 1962) ("A comment by the judge that a witness is not to be believed is prejudicial error unless instructions are given which make it clear that the court's observation is not binding on the jury."). Accordingly, the district court did not err in excluding evidence of its tentative findings that Derrington gave false testimony regarding his plea agreement with the government during Dvorin's first trial.

## D. Prosecutorial Misconduct

Dvorin contends that the district court erred in fashioning an inadequate sanction after finding that Sauter engaged in prosecutorial misconduct. In her

related appeal, Sauter challenges the district court's conclusions that she violated *Brady*, *Giglio*, and *Napue*, and that she acted with reckless disregard and engaged in irresponsible conduct.  We consider first whether the district court erred in concluding that Sauter violated *Brady*, *Giglio*, and *Napue*, and then address whether the district court erred in failing to sanction Sauter for any wrongful conduct.

We review a district court's holding that the government violated *Brady*, *Giglio*, or *Napue* de novo, but in doing so, afford deference to the district court's factual findings.  *See United States v. Guerrero*, 768 F.3d 351, 363 (5th Cir. 2014) (citing *United States v. Brown*, 650 F.3d 581, 589 (5th Cir. 2011)), *cert. denied*, 135 S. Ct. 1548 (2015).  However, in considering a district court's decision to (or decision not to) impose sanctions for discovery violations, "[w]e review alleged errors . . . under an abuse of discretion standard and will not reverse on that basis unless a defendant establishes prejudice to his substantial rights." *United States v. Holmes*, 406 F.3d 337, 357 (5th Cir. 2005) (quoting *United States v. Ellender*, 947 F.2d 748, 756 (5th Cir. 1991)).

1. *Brady* and *Giglio*

Sauter contends that the district court erred in concluding that she violated *Brady* and *Giglio* by failing to provide Dvorin's counsel a copy of Derrington's plea agreement supplement before Dvorin's first trial.  *Brady* prohibits the prosecution from suppressing evidence favorable to the defendant "where the evidence is material either to guilt or to punishment," *Brady*, 373 U.S. at 87, and *Giglio* applies *Brady* to evidence affecting the credibility of key government witnesses, *United States v. Davis*, 609 F.3d 663, 696 (5th Cir. 2010). To establish a *Brady* violation, a defendant must show: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or impeaching; (2) the evidence was suppressed by the prosecution; and (3) the evidence was material. *Brown*, 650 F.3d at 587–88. Sauter concedes that the

plea agreement supplement was favorable to Dvorin because it related to the credibility of a government witness, but she contends that the district erred in concluding that the supplement was suppressed and material.

    a. Suppressed

    Sauter argues that the plea agreement supplement was not suppressed because its existence was disclosed to Dvorin's counsel by a reference to it in Derrington's plea agreement, which was disclosed to Dvorin. Sauter contends that this should have prompted Dvorin's counsel to request the plea agreement supplement from the prosecution. Dvorin counters that the supplement was suppressed because, although the plea agreement referenced the supplement, the supplement itself was sealed, and thus could not be discovered by Dvorin's counsel through due diligence.

    To constitute suppressed evidence under *Brady*, the evidence must not have been discoverable through the defendant's due diligence. *Brown*, 650 F.3d at 588. "[E]vidence is not suppressed if the defendant knows or should know of the essential facts that would enable him to take advantage of it." *Id.* (quoting *United States v. Skilling*, 554 F.3d 529, 575 (5th Cir. 2009)). The *Brady* analysis regarding suppression focuses on the fact that the government need not "furnish a defendant with exculpatory evidence that is fully available to the defendant through the exercise of reasonable diligence." *Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002). Sauter does not, nor can she, contend that the plea agreement supplement was fully available to Dvorin's counsel through the exercise of due diligence. The plea agreement supplement was sealed and in the control and possession of the government. Accordingly, the district court correctly determined that Sauter suppressed the plea agreement supplement.

b. Material

Sauter next argues that the plea agreement supplement was not material for *Brady* purposes, because there is no reasonable probability that, had the evidence been disclosed, the result of Dvorin's first trial would have been different.  Dvorin responds that the testimony elicited at trial based on Derrington's plea agreement did not convey that the government had promised Derrington to forego other charges, had agreed that his testimony and statements could not be used against him, and had agreed to file a motion for sentence reduction in the event it found Derrington's assistance substantial.  Further, Dvorin contends that the testimony elicited at trial did not convey that all of these promises were expressly contingent on Derrington's testimony.

"Evidence is material if there is 'a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Brown*, 650 F.3d at 588 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Spence v. Johnson*, 80 F.3d 989, 994 (5th Cir. 1996) (quoting *Bagley*, 473 U.S. at 682).  The district court held that the plea agreement supplement was material because although the jurors might have been aware during trial that Derrington cooperated with the government in his own case, they were not aware that Derrington had motivation to testify in *Dvorin's* trial.  The court concluded: "[b]ecause the undisclosed evidence undermined the credibility of the Government's most important witness, . . . it was material."

We find no abuse of discretion in the district court's conclusion that this evidence was material.  Derrington was a key witness and the only other alleged conspirator with Dvorin.  During trial, Derrington testified that he was "cooperating with the . . . Government" and "hope[d] to obtain some leniency" at sentencing, but represented that he did not "get any promises from the

Government in exchange for [his] testimony." During cross examination, Dvorin's counsel elicited testimony that Derrington was hoping to get favorable treatment from the court and the government based on his cooperation. But this testimony does not make clear, nor does the plea agreement itself indicate, that the government agreed to "file a motion urging sentencing consideration for Derrington's cooperation if, in its sole discretion, it determine[d] that he ha[d] provided substantial assistance in the investigation or prosecution of others." It is reasonable to conclude that evidence of such consideration would be more powerful than Derrington's testimony that he merely hoped he would receive leniency, but had not received any promise from the government that he would. "[G]iv[ing] play to the trial court's superior understanding of the trial, evidence, and witnesses," *United States v. Sipe*, 388 F.3d 471, 480 (5th Cir. 2004), we affirm the district court's holding that the withheld evidence was material, and thus conclude that Sauter violated *Brady* and *Giglio*.

2. *Napue*

Sauter also challenges the district court's holding that she violated *Napue*'s prohibition against a prosecutor knowingly using false testimony to obtain a conviction. To establish a claim under *Napue*, a defendant must prove that the witness's testimony "was (1) false, (2) known to be so by the state, and (3) material." *Summers v. Dretke*, 431 F.3d 861, 872 (5th Cir. 2005). Sauter contends that Derrington's testimony was not false (and thus she could not have knowledge that it was false), and even if it was, it was not material.

With respect to the first element, Sauter argues that Derrington's testimony that he did not receive any promises from the government in exchange for his testimony was not false because the text of the plea agreement supplement is not an enforceable promise or guarantee. Paragraph 2 of the supplement reads:

16

> If, in its sole discretion, the government determines that the defendant has provided substantial assistance in the investigation or prosecution of others, it will file a motion urging sentencing consideration for that assistance. Whether and to what extent the motion are granted are matters solely within the Court's discretion.

Regardless of whether this provision of the supplement is an enforceable guarantee, under *Napue*, "the key question is not whether the prosecutor and the witness entered into an effective agreement, but whether the witness might have believed that the state was in a position to implement any promise of consideration." *LaCaze v. Warden La. Corr. Inst. for Women*, 645 F.3d 728, 735 (5th Cir. 2011) (alterations omitted) (quoting *Napue*, 360 U.S. at 270); *see also Giglio*, 405 U.S. at 155 ("[E]vidence of any understanding or agreement as to a future prosecution would be relevant to [the witness's] credibility . . . ."). In fact, as the Supreme Court recognized in *United States v. Bagley*, the fact that the government's willingness to seek leniency for a defendant is not guaranteed, but "was expressly contingent on the [g]overnment's satisfaction with the end result, serve[s] only to strengthen any incentive to testify falsely in order to secure a conviction." 473 U.S. at 683. The focus is "on the extent to which the testimony misled the jury[.]" *Tassin v. Cain*, 517 F.3d 770, 778 (5th Cir. 2008). Here, Derrington's testimony that he had not received any promise from the government was at best misleading, and at worst false, in light of the government's agreement to file a motion urging sentencing consideration if it determined that Derrington had substantially assisted its prosecution of Dvorin. Accordingly, we hold that the district court properly concluded that Sauter violated *Napue* in permitting Derrington to testify that that the government had not made any promises in exchange for his testimony.

With respect to the third element—materiality—Sauter again challenges the district court's conclusion that Derrington's false testimony was

material, and in doing so, concedes that the materiality standard under *Napue* is essentially identical to the analysis performed under *Brady*. Thus, for the reasons discussed above, we conclude that Derrington's false statement that he had not received any promise from the government was material and, accordingly, affirm the district court's finding that Sauter violated *Napue*.[4]

3. Sanctions

Having determined that the district court properly held that Sauter violated *Brady*, *Giglio*, and *Napue*, we now turn to Dvorin's challenge to the district court's decision not to award sanctions to address Sauter's misconduct. Dvorin contends that the district court erred in declining to impose any sanctions because the district court initially found that a new trial alone was insufficient to deter future misconduct. Specifically, Dvorin requested that the district court dismiss the indictment with prejudice, or, alternatively, preclude Derrington's testimony during the second trial. The district court declined to impose either requested sanction, concluding that neither dismissing the indictment nor excluding Derrington's testimony from the second trial would be reasonable. The district court also declined to impose sanctions against the government as an institution, and found that prosecutorial immunity prevented it from issuing monetary sanctions against Sauter individually or the government as a whole.

We review a district court's determination not to impose sanctions for abuse of discretion. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990). The following factors should guide a district court's exercise of its discretion to

---

[4] Sauter also challenges the district court's finding that she "exhibited a reckless disregard for her duties and conducted the proceedings in an irresponsible manner" solely on the ground that such a finding must be error because the district court's underlying findings of *Brady*, *Giglio*, and *Napue* violations were error. Having determined that the district court properly held that Sauter violated *Brady*, *Giglio*, and *Napue*, we likewise affirm the district court's findings of reckless disregard and irresponsible conduct.

impose sanctions for a discovery violation: "(1) the reasons why disclosure was not made; (2) the amount of prejudice to the opposing party; (3) the feasibility of curing such prejudice with a continuance of the trial; and (4) any other relevant circumstances." *United States v. Garrett*, 238 F.3d 293, 298 (5th Cir. 2000). Any sanction imposed should be the least severe penalty necessary to ensure compliance with the court's discovery orders. *Id.* The district court is given wide discretion in this fact-intensive inquiry. *Mercury Air Grp., Inc. v. Mansour*, 237 F.3d 542, 548 (5th Cir. 2001).

Considering these facts here, we conclude that the district did not abuse its discretion in declining to award sanctions to address Sauter's misconduct. First, the district court did not find, nor is there any indication in the record, that Sauter's failure to disclose Derrington's plea agreement supplement was intentional or in bad faith. Generally, a district court will not impose severe sanctions, like suppression of evidence, where the government's discovery violations were not committed in bad faith. *See, e.g.*, *Garrett*, 238 F.3d at 299.

Dvorin received a new trial obviating most of the prejudice involved except for the forfeiture issue. Because we grant Dvorin relief on this issue on another ground, we do not factor this point into the prejudice analysis here.[5]

With respect to the third consideration, a trial continuance was not needed to permit Dvorin to gain access to the undisclosed evidence, because the government agreed to a new trial. And finally, there are other relevant circumstances present here. For instance, the individual who was responsible for the discovery violation (Sauter) was no longer involved in the case at the time the district court was considering the propriety of awarding sanctions.

---

[5] We address the prejudice suffered by Dvorin as a result of the second trial in the form of the new forfeiture count in the indictment *infra* Section II.F.

19

Thus, the concern of deterring future misconduct was less significant than it might have been otherwise.

Under these circumstances, and bearing in mind the broad discretion we afford the district court in determining the propriety of imposing sanctions, we hold that the district court did not abuse its discretion in declining to award sanctions for Sauter's misconduct.

*E. Testimony of Chase Representative, Arthemis Lindsay*

Dvorin next challenges the district court's refusal to exclude the testimony of Chase Bank's representative, Arthemis Lindsay, contending that Lindsay's testimony should have been excluded because the government violated the district court's discovery order by failing to timely identify Lindsay on the government's witness list. The government had disclosed early on the desire to call a Chase Bank representative but had difficulty identifying the particular person who could testify. The district court allowed defense counsel to interview Lindsay when she appeared but denied the motion to exclude her testimony regarding Chase Bank procedures as it related to Dvorin's checks.

"We review the admission of evidence that violates a discovery order for abuse of discretion. In such cases we will order a new trial 'only where a defendant demonstrates prejudice to his substantial rights.'" *United States v. Aguilar*, 503 F.3d 431, 434 (5th Cir. 2007) (quoting *United States v. Cuellar*, 478 F.3d 282, 293 (5th Cir. 2007)). The district court has "great latitude" in "fashioning the appropriate remedy for alleged discovery errors." *Ellender*, 947 F.2d at 756. In considering whether to impose sanctions for discovery violations, a district should consider the following factors: "(1) the reasons why disclosure was not made; (2) the amount of prejudice to the opposing party; (3) the feasibility of curing such prejudice with a continuance of the trial; and (4) any other relevant circumstances." *Garrett*, 238 F.3d at 298 (5th Cir. 2000) (citing *United States v. Sarcinelli*, 667 F.2d 5, 7 (5th Cir. Unit B 1982)).

20

No. 15-10142 Cons. w/ No. 15-10183

Under these circumstances, considering the above factors, the district court did not abuse its discretion in permitting Lindsay to testify despite the government's failure to disclose her identity until the day of trial. First, the government gave a legitimate reason for failing to timely disclose the specific identity of the Chase Bank representative who would testify at trial, and Dvorin does not contend that the government's failure to timely disclose was in bad faith. *See Garrett*, 238 F.3d at 295, 298–300 (concluding that a district court abused its discretion in excluding 25 government witnesses where the government did not act in bad faith in failing to timely disclose letters written to potential government witnesses, and characterizing exclusion of witnesses as a "draconian sanction"). Second, the record does not support Dvorin's contention that he suffered "extraordinary prejudice" as a result of the late disclosure. Finally, the court permitted Dvorin's counsel to meet with Lindsay during the lunch break and ask her questions regarding her testimony. Dvorin has not shown how he would have been more prepared to cross-examine Lindsay had her name been timely disclosed on the witness list. *See Aguilar*, 503 F.3d at 434. Accordingly, we conclude that the district court did not err in permitting Lindsay to testify despite the government's late disclosure of her identity.

*F. Prosecutorial Vindictiveness*

Finally, Dvorin argues that the district court erred in permitting the government to add a forfeiture notice in the second superseding indictment, contending that the addition of the forfeiture notice was an act of prosecutorial vindictiveness that violated his right to due process.[6] We review a district

---

[6] Dvorin also challenges the forfeiture count on the ground that the district court erred in concluding that Dvorin did not have a right to have a jury find the facts essential to a forfeiture money judgment in violation of the Sixth Amendment. A panel of this court held recently, however, that a defendant does not have a right to a jury determination in the forfeiture context. *United States v. Simpson*, 741 F.3d 539, 560 (5th Cir. 2014). Dvorin's only

court's factual findings concerning prosecutorial vindictiveness for clear error and its legal conclusions de novo. *United States v. Saltzman*, 537 F.3d 353, 359 (5th Cir. 2008). "To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'" *United States v. Goodwin,* 457 U.S. 368, 372 (1982) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)). Accordingly, a prosecutor may not increase the charge or penalty against a defendant solely as a punishment for invoking his right to appeal. *Saltzman*, 537 F.3d at 359 (citing *United States v. Krezdorn,* 718 F.2d 1360, 1362–65 (5th Cir. 1983) (en banc)). The defendant must prove prosecutorial vindictiveness by a preponderance of the evidence, and may do so either by showing actual animus or "show[ing] sufficient facts to give rise to a presumption of vindictiveness." *Saltzman*, 537 F.3d at 359. Dvorin argues only the latter.

To determine whether the presumption of vindictiveness applies, the court "examine[s] the prosecutor's actions in the context of the entire proceedings," and "[i]f . . . the course of events provides no objective indication that would allay a reasonable apprehension by the defendant that the [additional] charge was vindictive, . . . a presumption of vindictiveness applies." *Krezdorn*, 718 F.2d at 1365. The presumption "cannot be overcome unless the government proves by a preponderance of the evidence that events occurring since the time of the original charge decision altered that initial exercise of the prosecutor's discretion." *Id.*

Dvorin argues for application of the presumption because: (1) the second superseding indictment included an additional forfeiture count that was not in

---

argument on this point is that *Simpson* was wrongly decided. The rule of orderliness precludes this panel from overturning the holding in *Simpson*. *See Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008).

the original indictment and could (and did) result in additional penalties; (2) the prosecutor sought to add the additional penalty based on the same conduct; and (3) the prosecutors had strong institutional bias against retrying the same issues. The government does not seem to contest these particular arguments, but contends that the presumption of vindictiveness does not apply here because objective events in the record show that the prosecutors' decision to add the forfeiture notice was not motivated by a vindictive desire to deter or punish appeals.

We conclude that Dvorin has proved sufficient facts to invoke the presumption and the government has not rebutted the presumption. First, much of the evidence pointed to by the government is not evidence of an "objective event" that would motivate the government to add the forfeiture count.[7] *See, e.g., United States v. Wells*, 262 F.3d 455, 467 (5th Cir. 2001) (concluding that a defendant's breach of a plea agreement is an objective event that could cause that prosecutor to withdraw leniency and alter the sentencing recommendation previously given); *United States v. Moulder*, 141 F. 3d 568, 572 (5th Cir. 1998) (successful appeal seeking dismissal of the defendant's conviction was an objective event that would motivate the government to reinstate a drug charge that had previously been dismissed pursuant to a plea agreement); *Krezdorn*, 718 F.2d at 1362, 1365 (concluding that the prosecutor's

---

[7] Specifically, the government points to the following evidence: (1) the forfeiture count was added by a prosecution team that was not involved in the original prosecution and appeal; (2) the prosecution did not seek a new indictment just to add the forfeiture notice, but also clarified the charge and scheme and addressed issues Dvorin raised in a motion to strike surplusage; (3) the new prosecutors added the forfeiture notice because its omission in the prior indictment was an oversight that was contrary to office practice; (4) the government's decision to add the forfeiture notice was based in part on new analysis of Pavillion's records showing the monetary benefit Dvorin received from the check-kiting scheme; (5) the prosecutors sought forfeiture to give them additional tools to make the victim whole; and (6) the government's overall conduct belies the notion that the forfeiture notice was included out of vindictiveness.

decision to charge conspiracy in a superseding indictment was motivated by the Fifth Circuit's intervening opinion reversing the defendant's convictions on the ground that evidence of 32 forgeries was inadmissible absent a conspiracy charge). The government has not pointed to any objective event that would motivate prosecutors to add a forfeiture count aside from Dvorin's appeal and the agreed remand. The government's primary argument was that the omission of the forfeiture count was a "mistake" that was "corrected" on remand.

Additionally, the circumstances surrounding the addition of the forfeiture count support concluding that the presumption of vindictiveness applies here. Dvorin originally appealed his conviction on the ground that prosecutorial misconduct occurred, and while his appeal was pending, appellate counsel for the government discovered additional prosecutorial misconduct. Although the government agreed to a remand, the district court concluded that the reason behind the government's agreement was "because the Government knew that [Dvorin's] conviction would be reversed," not because the government was "accommodating [Dvorin] and giving [him] the benefit of the doubt." The district court then issued a show cause order in which it requested that the government's counsel file a pleading addressing why sanctions should not be imposed for the failure to disclose Derrington's plea agreement supplement and for allowing Derrington to falsely testify that the government had not made him any promises. Only after the district court issued its show cause order did the government file the superseding indictment that included the forfeiture count for the first time. Although the forfeiture count was added by a prosecution team that was not involved in the original prosecution and appeal, the new prosecution team was made up of attorneys who simply worked in a different division of the same U.S. Attorney's office. Under these circumstances, there is no "objective indication that would allay a

reasonable apprehension by the defendant that the [additional] charge was vindictive." *Krezdorn*, 718 F.2d at 1365.    Thus, we conclude that the presumption of vindictiveness applies.

Further, the government has failed to overcome this presumption by proving by a preponderance of the evidence that events occurring since the time of the original charge decision altered the initial exercise of the prosecutor's discretion.  The government merely points to the same evidence outlined above, and contends that this evidence rebuts the presumption.  We are not persuaded by this evidence for the same reasons we have already discussed.    Accordingly, we reverse the district court's denial of Dvorin's motion to dismiss the forfeiture account for prosecutorial vindictiveness, and we vacate the district court's judgment of forfeiture.

### III. Conclusion

For the foregoing reasons, we VACATE the district court's judgment of forfeiture and AFFIRM on all other grounds.