# United States Court of Appeals
# for the Fifth Circuit

---

No. 21-50886

---

United States Court of Appeals
Fifth Circuit

**FILED**

November 28, 2022

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

Lorenzo Rubio, Jr.,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:21-CR-78-4

---

Before Jones, Haynes, and Oldham, *Circuit Judges*.

Per Curiam:*

A jury convicted Lorenzo Rubio of conspiracy to distribute and possession with intent to distribute 50 or more grams of methamphetamine, in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(a). The district court sentenced Rubio to 300 months' imprisonment, followed by supervised release.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-50886

On direct appeal, Rubio presents two issues for review. First, he argues that the district court erred when it admitted a report containing text messages exchanged by Rubio and his co-conspirator. Second, Rubio argues that the Government's allegedly-late production of cell phone records should have caused the trial court to either grant a continuance, exclude the tardy evidence, or both. We reject Rubio's arguments and affirm.

I.

Rubio's first argument disputes the trial court's admission of testimony concerning and an exhibit of 19 text messages produced by a software program called "Cellebrite Analyzer." The texts were extracted from the cell phone of Rubio's co-conspirator, one Stephen Neilson. Rubio objected to the introduction of the messages as inadmissible hearsay and a violation of his Sixth Amendment confrontation right. We first discuss (A) Rubio's hearsay objection, then (B) his Confrontation Clause claim. Then, (C) we explain that any error was harmless.

A.

The relevant texts discuss, obliquely, the logistics of various contemplated drug transactions. We review the trial court's application of Federal Rule of Evidence 801(d)(2) for abuse of discretion, subject to a preponderance of the evidence standard. *United States v. Elashyi*, 554 F.3d 480, 503 (5th Cir. 2008). We review the factual predicates underlying the district court's conspiracy hearsay exception for clear error. *See United States v. Burton*, 126 F.3d 666, 673 (5th Cir. 1997).

At the time of the text messages' admission, the trial judge was aware that police had found methamphetamine in a pickup truck occupied by Rubio and two alleged coconspirators when that truck was stopped. The trial court had heard testimony of Neilson, an interlocutor in each of the relevant text messages, and had heard Neilson authenticate the communications and

2

inculpate Rubio in the drug-distribution scheme. The trial judge had also heard testimony recounting Rubio's arrival at a hotel room where more than a pound of methamphetamine was later found.

It is not necessary to further recount the trial record; these items alone constitute sufficient evidence for the trial court's application, applying a preponderance standard, of Rule 801(d)(2)(E)'s conspiracy hearsay exception. That excepts texts sent by conspirators other than Rubio. Texts sent by Rubio and offered against him were, to the extent any of them might otherwise constitute hearsay, opposing party statements excepted by Rule 801(d)(2)(A).

## B.

Rubio next invokes Constitution's Confrontation Clause. In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court explained that the Sixth Amendment right of the accused "to be confronted with the witnesses against him" precluded the admission of "testimonial" statements where the accused was denied cross-examination, regardless of any hearsay exception. *Id.* at 54–56. Rubio's confrontation challenge may be construed as applying to both the text messages contained in the Cellebrite report, as well as to the report itself.

Rubio's confrontation challenge to the text messages is without merit. That is because statements are testimonial only if the "primary purpose" of the declarant making the statements was to inculpate the defendant or prove facts pertinent to criminal prosecution. *United States v. Ayelotan*, 917 F.3d 394, 403 (5th Cir. 2019) (relying on *Davis v. Washington*, 547 U.S. 813, 822 (2006)). We have previously held that "as a general matter," coconspirator statements made in furtherance of a conspiracy are not testimonial. *Id.* The text messages in this case were sent by conspirators to operate the

conspiracy, not to inculpate any defendant. The messages were therefore admissible under *Ayelotan*.

Rubio's confrontation challenge to the Cellebrite report itself (the document containing the text messages we just addressed) likewise fails. The Cellebrite report merely documented, without any further comment, the text messages we addressed above. Those messages were authenticated by Neilson, from whose phone they were sourced. The police officer who used Cellebrite software to create the report also testified at trial, as follows:

> I follow the directions, and I choose the extraction that I want to perform on the phone. Once that happens, I literally press start. The [extraction device] does all the extraction, and then the data is sent over to another system software called Cellebrite analyzer. From there, that is what interprets all the data. Once that is done, I put all the information on to a USB drive, and I hand it over to the detective or officer, and the phones are logged back into evidence.

It is unclear what portion of this rote process Rubio purports to challenge under the Confrontation Clause. But we have already held that that cell phone extraction reports were "machine-generated results" and thus not testimonial. *United States v. Hill*, 35 F.4th 366, 390 (5th Cir. 2022).[†] And to

---

[†] *Hill* decided the issue under a de novo standard and hence forecloses Rubio's argument. But *Hill* is far from the only authority supporting that result. *See also United States v. Waguespack*, 935 F.3d 322 (5th Cir. 2019) (declining to find that machine-generated results trigger the confrontation clause, albeit on plain error review); *United States v. Ballesteros*, 751 F. App'x 579, 580 (5th Cir. 2019) (per curiam) (finding no plain error where appellant raised confrontation challenge to cell-phone GPS data reports). Our approach also parallels other Circuits considering Cellebrite reports or analogous machine-generated evidence. *See United States v. Moon*, 512 F.3d 359, 362 (7th Cir. 2008) (Easterbrook, J.) ("the Confrontation Clause does not forbid the use of raw data produced by scientific instruments"); *United States v. Hamilton*, 413 F.3d 1138, 1142 (10th Cir. 2005) (concluding that machine-generated data is not hearsay); *United States v. Seugasala*, 702 F. App'x 572, 575 (9th Cir. 2017) (unpublished) (finding no plain error where trial court

No. 21-50886

the extent Rubio fears any portion of the report was manipulated, the officer most closely involved in the creation of that report was available to him for cross examination.

C.

Even if evidence or testimony was improperly admitted, the error may be harmless. *See* Fed. R. Crim. Proc. 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."). We have previously indicated that evidentiary errors are subject to harmless error review. *See*, *e.g.*, *United States v. Okulaja*, 21 F.4th 338, 346 (5th Cir. 2021).

The text messages contained in the Cellebrite report used coded language; none contained the word "methamphetamine," "meth," or similar "smoking gun." The Government's case included the testimony of several coconspirators, who identified and inculpated Rubio. As discussed, police observed Rubio at a hotel with his conspirators, where methamphetamine was later found. When police intercepted a truck containing Rubio and two conspirators, Rubio was seated in the back seat. A container of methamphetamine was also in the back seat. Although Rubio denied distributing methamphetamine, he admitted to consuming it with other conspirators. Finally, police seized a ledger kept by the apparent leader of the conspiracy, Edward Brueggemeyer, who authenticated it on the stand.

---

admitted Cellebrite evidence); *United States v. Marsh*, 568 F. App'x 15, 16–17 (2nd Cir. 2014) (summary order) (finding no need for expert testimony where, as here, the officer performing Cellebrite extraction testified at trial); *United States v. Lamons*, 532 F.3d 1251, 1262–64 (11th Cir. 2008) (observing no Confrontation Clause violation where software-decrypted cell phone records were introduced into evidence); *United States v. Arce*, 49 F.4th 382, 391–92 (4th Cir. 2022) (holding Cellebrite reports generally non-testimonial, except where algorithms offered opinions about extracted data).

The ledger listed monetary amounts and names of conspiracy members. The name "Lorenzo" (Rubio's first name) appears in the ledger.

Given the overwhelming nature of the evidence against Rubio, any evidentiary error tied to the Cellebrite report was harmless.

## II.

Rubio also argues that the trial judge should have granted his motion for a continuance after the Government's production of cell phone records. The Government shared extraction reports from Rubio's phone on April 29, 2021, from Brueggemeyer's and Neilson's phones on May 17, 2021, and from co-conspirator Michael Moore's phone on May 20, 2021, ahead of the originally-scheduled June 7 trial date. The records contained 8 gigabytes of data. Relatedly, Rubio argues that the trial court should have sanctioned the allegedly-late production by excluding the evidence.

We review continuance issues for abuse of discretion. *United States v. Stalnaker*, 571 F.3d 428, 439 (5th Cir. 2009). For relief, any abuse must result in "serious prejudice." *Id.* (quotation omitted). We similarly review a district court's decisions on discovery sanctions for abuse of discretion. *United States v. Dvorin*, 817 F.3d 438, 450 (5th Cir. 2016). Relief also requires finding prejudice. *Id.*

Other than a generalized nod towards the need for time, Rubio does not explain how the trial court's decisions prejudiced him. That precludes relief. *See United States v. Lewis*, 476 F.3d 369 (5th Cir. 2007) (finding inability to show prejudice precluded relief). Further, the record shows that the trial court was not completely insensitive to Rubio's concerns. It ordered the Government to specify in advance any cell-phone records the Government planned to introduce. Without granting a longer continuance, the trial court moved the trial date by two days, to June 9, 2021, in part to

give Rubio more time to review the records. And there is no evidence or suggestion from Rubio that the Government behaved in bad faith in any way.

Further, Rubio's conduct after the denial of his continuance motion undermines this appeal. The parties voluntarily went to trial one day early, on June 8, 2021. The trial court repeatedly warned Rubio that starting early could prejudice his demand for a continuance, at one point saying, "You want to have it both ways. We will see how the Circuit figures that out." Rubio's choice to start early suggests he did not need a continuance. On these facts, we do not find that the trial court abused its discretion.

AFFIRMED.