# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-20131

UNITED STATES OF AMERICA,

> Plaintiff - Appellant

v.

SIMONE SWENSON,

> Defendant - Appellee

United States Court of Appeals
Fifth Circuit

**FILED**
July 3, 2018

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, SMITH, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

We decide whether the district court abused its discretion by dismissing an indictment with prejudice because the prosecution missed pretrial discovery deadlines, mistakenly withheld some relevant documents until the eve of trial, and committed other errors that led the district court to conclude the "integrity of the prosecution ha[d] been destroyed." We reverse the dismissal order and remand for further proceedings.

## FACTS AND PROCEEDINGS

The government indicted Simone Swenson, the owner and operator of an adoption agency, for fraud because, on multiple occasions, she matched two prospective families with the same birth mother as a means to secure funds

No. 17-20131

from both prospective families.[1] According to the indictment, once Swenson received the required fees from the adoptive families, she would avoid contact with them. And "she would find a way, through lies and misrepresentations, to get out of the double matches."

Swenson retained counsel and pleaded not guilty to the charges. She was released on bond, and she has not been in custody since August 2015.

Swenson's investigation generated many documents, rendering the case fact intensive. Swenson's retained counsel sought an initial continuance because she was "not prepared to proceed to trial." Soon thereafter, Swenson apparently could no longer afford her privately retained counsel, who withdrew from the case. The office of the Federal Public Defender was appointed to represent her. Swenson's new counsel asked for a second continuance because she was new to the case and had not yet received the discovery from the prosecution. Swenson then sought, and was granted, two more continuances, because "defense counsel [was] still waiting to receive additional documents requested from third-parties that [were] necessary to fully investigate the case and to prepare for trial."

Trial was scheduled for February 7, 2017. The district court imposed deadlines on the parties to disclose all of their requisite discovery under Federal Rule of Criminal Procedure 16(a). The government had until January 17 to comply.

After the parties produced their documents, but before the pretrial conference, defense counsel expressed concerns about the prosecution's discovery. By way of background, some of the claims in the indictment stated that, to perpetuate her fraud, Swenson "was always available and responsive

---

[1] The government charged her with two counts of mail fraud and two counts of wire fraud and gave notice of criminal forfeiture. *See* 18 U.S.C. §§ 1341, 1343.

2

to prospective adoptive families prior to receiving agency fees." However, once she "received the necessary fees from the adoptive families, she was unavailable and would not return phone calls for long periods of time, if at all." To prove these claims, the prosecution sought access to the email communications between the victimized families and Swenson. The prosecution wanted to subpoena the email provider—"sanspareil.org"—but was having trouble because of the domain name.[2] Oddly, having encountered this difficulty, the prosecution's solution was to ask the victimized families to search their own accounts and send anything they thought was relevant. Swenson objected that these emails had never been authenticated and that the prosecution's production consisted of incomplete email-strings that contained missing messages.

On January 23, the district court held the first (of four) pre-trial hearings to discuss the indictment, motions in limine, exhibits, and discovery. Defense counsel explained her concern that the prosecution was allowing the victimized families and witnesses to decide whether evidence was relevant. The district court agreed with the defense that this was problematic because the prosecution was abdicating its duty to determine whether exculpating evidence existed. The prosecutor attempted to mollify the district court by explaining that she "just didn't want the court to think we are hiding evidence or trying not to produce things" and "[d]iscovery has not been an issue in this case. I am very open. I give everything to defense counsel as soon as I get it, Your Honor. I make copies for everyone." The prosecutor later reiterated that she was not "hiding anything." The district court ordered the prosecutor to subpoena *all* of the emails. And the prosecution offered to obtain search warrants for the

---

[2] Swenson's brief includes a footnote explaining that it is not difficult to find the Internet service provider and domain name of .org addresses.

families' and witnesses' emails. The defense agreed to this plan, but stated that it was ready for trial and did not wish to wait any longer.

On January 24, the parties had a second pretrial conference in the district court's chambers, and he signed the search warrants that had been discussed in the first pretrial conference. There is no transcript of this proceeding, but—according to defense counsel—the district court "made clear to the government that it should immediately comply with its constitutional and rule-based discovery obligations."

A few days later, on January 27, the prosecution dumped a large number of documents on defense counsel. These documents included emails from the victimized families, which contained messages that Swenson believed are inconsistent with the families' statements in FBI reports. There was also a set of documents labeled "Dropbox files received from Maggie Steffen on 2/14" and another set labeled "Documents received from Kathleen Ruysser 2/2014." Swenson believed that many of these documents contained exculpatory material.

On January 29, defense counsel moved for a continuance in light of the data dump. The parties held another pretrial conference with the district court on January 31. Despite receiving the large data dump a few days before, defense counsel withdrew her motion for a continuance, stating she was ready for trial. Defense counsel further stated that she believed that she had received all the documents from the government.

Then, on February 3, only a few days before trial was set to begin, as a result of her own investigation, defense counsel learned of the existence of a police report that Swenson had made to the Montgomery County Sheriff's Office regarding Swenson's allegations that one of the birth mothers had committed fraud. Specifically, the report stated that the birth mother had

agreed with Swenson to give up her baby and receive living expenses, but the birth mother had made the same agreement with a different adoption agency.

Defense counsel contacted the prosecutor, who emailed her that report, along with four more reports, two of which had been filed by victimized families. Swenson claimed that these reports also contained at least impeaching, if not exculpatory material, including one statement from a victim explaining that "she had good communication between [Swenson] and the prospective birth mother." Swenson argued that this statement directly refutes an FBI report that indicates Swenson denied the victim's initial request to speak with the birth mother. These documents also showed that, after receiving the victim's report, the FBI report had been redrafted to exclude all of the contacts that the victim had with Swenson and the birth mother to fit the indictment's theory that the victimized families had a difficult time communicating with Swenson and the mothers.

Swenson immediately moved to dismiss based on violations of *Brady v. Maryland*, 373 U.S. 83 (1963), Federal Rule of Criminal Procedure 16, and the district court's discovery order. The government did not file a response to the motion.

On February 6, the day before trial was supposed to begin, the parties had a hearing before the district court regarding the motion to dismiss. The government delivered yet another file of documents that had been too large to deliver via email on Friday. The district court asked the prosecution if it had a response to the motion to dismiss and why Swenson's police report was not a part of the government's investigation. The prosecutor explained that the reports were part of the investigation, and that she had received them years before. The prosecutor apologized. She explained: "It is my mistake, Your Honor. I don't ever remember opening the e-mail or downloading the documents." The prosecution urged, however, that the reports were

No. 17-20131

"repetitious" and the fact that Swenson had been scammed by a birth mother had nothing to do with her double-matching scheme.

The district court excoriated the prosecution for the mistake: "You're supposed to know what you're doing. You're supposed to be the one thinking of stuff." The district court then apparently attributed her mistake to her sex: "It was lot simpler when you guys wore dark suits, white shirts and navy ties. . . . We didn't let girls do it in the old days."[3] After discussing the newly produced evidence, the district court asked: "What else is out there that you misplaced or didn't think was relevant so you didn't check it at all?" The prosecutor tried to assure the district court that she was not intentionally withholding any information: "I have been an open book. I never try to keep anything back." When asked if she had searched the too-large file that the prosecution delivered to the defense that morning, the prosecutor said no because she had not been aware of it. But she stressed that she "did [her] own investigation and created [her] own theory of the case."

The district court then pronounced that "the government has had this case for three years. That should be more than enough." Noting the 79 docket entries, the district court decided: "So, I could continue the case for the purpose of allowing the government to prepare its case and to share the information it has . . . . A continuance, however, would be too much delay. This is not a particularly complicated case, and there is no reason to extend it farther. The case will be dismissed." Upon prompting by defense counsel, the district court clarified that the dismissal was with prejudice, reasoning that "to crank it up and take another three years is unacceptable."

---

[3] At oral argument, Swenson's counsel contended that the record is ambiguous and perhaps the district court was speaking not to the prosecutors, but to other women present at the hearing. Regardless, such comments are demeaning, inappropriate, and beneath the dignity of a federal judge.

No. 17-20131

After the hearing, the district court entered a short written order dismissing the case with prejudice: "The law is insistent on full disclosure. The court could continue the case—for the fifth time—to allow the United States to prepare and share its information; but, because the United States has had this case for three years, that would be too much delay. The indictment is dismissed with prejudice."

The government filed a motion for reconsideration, arguing that there was no *Brady* violation, explaining that the newly revealed evidence was not helpful to the defense or new information, and requesting that the district court grant a continuance rather than dismiss the case with prejudice. Swenson responded, arguing that "[t]he government's pattern of failing to disclose evidence, and its current unwillingness to accept that its failures were material and prejudicial demonstrates that the integrity of this prosecution has been destroyed."

Finally, the district court issued an "Opinion on Reconsideration," which—in its entirety—stated as follows:

> Over the course of four pretrial conferences—within ten days of trial—the government represented that it had turned over all evidence. Each time it later disclosed new evidence of exculpatory and impeachment materials.
>
> The government conveniently forgot that it had in its possession (a) correspondence between the adoptive parents and Swenson, (b) police reports from 2013 filed by Swenson and the adoptive parents—two of whom the government intended to call as witnesses at trial, and (c) statements by the adoptive parents that were inconsistent with [FBI]'s report. Despite its obligation to investigate the case completely, the government relied on its witnesses to filter their own documents and select what they as interested-party laymen considered to be relevant.
>
> Because the integrity of this prosecution has been destroyed, the government's motion for reconsideration is denied.

7

No. 17-20131

The government appealed.

## STANDARD OF REVIEW

When a dismissal is predicated upon the district court's supervisory powers, we review only for an abuse of discretion. *See United States v. Garrett*, 238 F.3d 293, 297–98 (5th Cir. 2000). And we review any factual finding from the district court, including credibility determinations, only for clear error. *See United States v. Cordova-Soto*, 804 F.3d 714, 718 (5th Cir. 2015). "A factual finding is clearly erroneous only if, based on the entirety of the evidence, the reviewing court is left with the definite and firm conviction that a mistake has been made." *Id.*

We review a district court's determination on a *Brady* claim de novo, though we defer to factual findings underlying the district court's decision. *United States v. Cessa*, 861 F.3d 121, 128 (5th Cir. 2017).

## DISCUSSION

When denying the prosecution's motion for reconsideration, the district court expressed several concerns about the government's conduct. It worried about the last minute disclosures, the government's retention of material the district court considered exculpatory until prompted by the defense, and the government's reliance on the victim/witnesses to determine what materials were relevant. Although Swenson contended that the prosecution's conduct violated *Brady* and *Giglio v. United States*, 405 U.S. 150 (1972), the district court did not discuss, cite, or rule on that issue. Instead, looking to the prosecution's missteps, the district court concluded that "the integrity of this prosecution has been destroyed."

On appeal, the government argues that its conduct did not violate *Brady* and the district court abused its discretion when it dismissed Swenson's indictment with prejudice. Swenson urges us to affirm the district court, contending that the prosecution's missteps supported the dismissal with

8

prejudice. None of Swenson's arguments or the district court's concerns supports dismissing the indictment with prejudice.

## I. No *Brady* Violation

Under the familiar *Brady* standard, the government violates a defendant's due process rights if it withholds evidence that is favorable to the accused and material to the defendant's guilt or punishment. *Brady*, 373 U.S. at 87. This rule applies "irrespective of the good faith or bad faith of the prosecution." *Id.* And it "extends to impeachment evidence as well as exculpatory evidence." *Youngblood v. West Virginia*, 547 U.S. 867, 869 (2006). To prevail on a *Brady* claim, "a defendant must show: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or impeaching; (2) the evidence was suppressed by the prosecution; and (3) the evidence was material." *United States v. Dvorin*, 817 F.3d 438, 450 (5th Cir. 2016). The government argues that all three prongs (favorability, suppression, and materiality) weigh in its favor.

Whether the government can show favorability or materiality is irrelevant because here the evidence clearly was not suppressed. Under this court's case law, evidence that is turned over to the defense *during* trial, let alone *before* trial, has never been considered suppressed. *See Powell v. Quarterman*, 536 F.3d 325, 335 (5th Cir. 2008). Instead, this court has held that when a defendant challenges "the late production of impeachment evidence," the analysis "turns on whether the defendant was prejudiced by the tardy disclosure." *United States v. Morrison*, 833 F.3d 491, 508 (5th Cir. 2016). "If the defendant received the material in time to put it to effective use at trial, his conviction should not be reversed simply because it was not disclosed as early as it might have and, indeed, should have been." *United States v. McKinney*, 758 F.2d 1036, 1050 (5th Cir. 1985). Mere speculation that a trial might have gone differently is insufficient to show the requisite prejudice from

a tardy disclosure. *See United States v. Stanford*, 823 F.3d 814, 841 (5th Cir. 2016) (It is "unwise to infer the existence of *Brady* material based upon speculation alone." (internal quotations omitted)).

Swenson argues that the delay prejudiced her because "if she had received the documents at the beginning of the case, her preparation and strategy would have been entirely different." She also claims that she would have searched for other documents and evidence. This argument is too speculative. And a continuance of the trial would have solved most of these problems. Swenson was not confined, and there is no reason to think that another continuance would have caused her any difficulty. Even without a continuance, Swenson probably could have used the evidence effectively at trial. Thus, there was no suppression and no *Brady* violation.

But even if Swenson could show a *Brady* violation, the usual remedy is a new trial, not dismissal with prejudice. *See United States v. Brown*, 650 F.3d 581, 588–89 (5th Cir. 2011). The district court's remedy cannot be supported on these grounds.

II. Discovery Violations Here Do Not Warrant Imposed Sanction

A district court commands "broad discretion" when deciding whether to impose sanctions for discovery violations. *Garrett*, 238 F.3d at 298. But, before employing sanctions, it "must carefully weigh several factors." *Id.* Specifically, it must consider: "1) the reasons why disclosure was not made; 2) the amount of prejudice to the opposing party; 3) the feasibility of curing such prejudice with a continuance of the trial; and 4) any other relevant circumstances." *Id.* If the district court decides to sanction a party, it "should impose the least severe sanction that will accomplish the desired result—prompt and full compliance with the court's discovery orders." *Id.* (quoting *United States v. Sarcinelli*, 667 F.2d 5, 7 (5th Cir. Unit B 1982)).

No. 17-20131

In neither its written orders nor any of the pretrial conferences did the district court expressly consider the *Garrett* factors when fashioning a sanction for the government's failure to comport with the discovery deadline. *See* 238 F.3d at 298. Although the district court acknowledged that it "could continue the case," the district court chose dismissal with prejudice instead because "the United States has had this case for three years" and granting another continuance would cause "too much delay." But Swenson was not in custody during the pretrial proceedings. And Swenson had asked for four continuances already. The district court did not explain why one more continuance—the first requested by the government—would cause too much delay. The district court failed to impose the least severe sanction, and the government's violations of the discovery deadlines do not warrant dismissing the indictment with prejudice.

### III. No Prosecutorial Misconduct or Prejudice

This court has stressed that "even in the case of the most 'egregious prosecutorial misconduct,' [an] indictment may be dismissed only 'upon a showing of actual prejudice to the accused.'" *United States v. McKenzie*, 678 F.2d 629, 631 (5th Cir. 1982) (quoting *United States v. Merlino*, 595 F.2d 1016, 1018 (5th Cir. 1979)). And "mere error or oversight is neither gross negligence nor intentional misconduct." *United States v. Fulmer*, 722 F.2d 1192, 1195 (5th Cir. 1983) (internal quotations omitted). "Thus, whether the court is acting under its supervisory authority or its duty to protect the constitutional rights of defendants, an indictment may be dismissed only where the defendants' case has been unfairly prejudiced." *McKenzie*, 678 F.2d at 631. In other words, "the supervisory authority of the district court includes the power to impose the extreme sanction of dismissal with prejudice only in extraordinary situations and only where the government's misconduct has prejudiced the defendant."

11

No. 17-20131

*United States v. Welborn*, 849 F.2d 980, 985 (5th Cir. 1988); *see also United States v. Campagnuolo*, 592 F.2d 852, 865 (5th Cir. 1979).

Dismissal of an indictment with prejudice is a rare result because, even in the face of prosecutorial misconduct, there is a "public interest in having indictments prosecuted." *Welborn*, 849 F.2d at 985. That said, this court has expressly declined to "foreclose the possibility that governmental ineptitude and carelessness could be so abhorrent as to warrant a dismissal with prejudice." *Fulmer*, 722 F.2d at 1196.

The district court never expressly determined whether the government's conduct was motivated by bad faith. But some conclusions about the district court's reasoning can be drawn from the record. Though Swenson attempts to paint some of the district court's comments from the hearing as accusations of bad faith, it does not appear that the district court attributed ill intent to the prosecution. If anything, it seems the district court attributed the government's mistakes to the prosecutor's sex.

Reviewing the record, we found nothing to suggest that the prosecution intentionally withheld the documents or acted in bad faith. Swenson points to an email an FBI agent wrote to the prosecutor that Swenson says suggests there may have been a conscious decision to wait for defense counsel to specifically request pieces of evidence before disclosure. The email says, "*As you know*, [somebody from Montgomery County] sent several of these reports . . . ." (emphasis added). We disagree that anything can be inferred from this innocuous message. And the prosecutor expressly acknowledged that she did not "ever remember opening the e-mail or downloading the documents."

It is beyond dispute that the government made some missteps. Swenson and the district court are, of course, correct that a prosecutor cannot delegate the duty to review exculpatory evidence. *See Kyles v. Whitley*, 514 U.S. 419, 438 (1995) (placing the burden to discharge *Brady* obligations on the

12

prosecutor). The government was wrong to allow the victims to decide what evidence was relevant. And the government admittedly missed the discovery deadline. But these mishaps are benign mistakes that were remedied or could have been remedied with a continuance, and "mere error or oversight is neither gross negligence nor intentional misconduct." *Fulmer*, 722 F.2d at 1195 (internal quotations omitted). Although this court has declined to "foreclose the possibility that governmental ineptitude and carelessness could be so abhorrent as to warrant a dismissal with prejudice," *id.* at 1196, the government's mistakes here did not reach an abhorrent level.

Even assuming bad faith, Swenson must show "actual prejudice" before this court could affirm the dismissal of the indictment. *See McKenzie*, 678 F.2d at 631. We are unpersuaded by Swenson's arguments that the government's missteps caused Swenson any prejudice. As discussed above, because Swenson received all of the information before trial, none of the documents was "suppressed" under the *Brady* analysis. The district court, disapproving of the government's practice of allowing the witnesses to determine what documents were relevant, signed warrants for the victimized families' emails. And the defense agreed to go to trial without a continuance to digest the new information. Although the government should not have waited until the eve of trial to produce documents to the defense, a continuance would have remedied any prejudice.

Swenson has failed to demonstrate prejudice sufficient to support the district court's severe sanction. The district court abused its discretion when it dismissed Swenson's indictment with prejudice.

## CONCLUSION

We REVERSE and REMAND the judgment dismissing the indictment, and we direct the Chief Judge of the Southern District of Texas to reassign this

case to a different district judge. *See, e.g., Latiolais v. Cravins*, 574 F. App'x 429, 436 (5th Cir. 2014).