# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-50502

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

RHONDA LYNN CHESSER, also known as Rhonda Lynn Chesser Lindstrom,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:17-CR-1339-1

United States Court of Appeals
Fifth Circuit

**FILED**
November 18, 2019

Lyle W. Cayce
Clerk

Before SOUTHWICK, GRAVES, and ENGELHARDT, Circuit Judges.

PER CURIAM:[*]

A jury convicted the defendant on three counts of making a false statement in a passport application. On appeal, the defendant seeks reversal on the basis that the Government did not disclose a report containing an allegedly exculpatory statement she had made until after the Government rested its case-in-chief. The district court determined that the discovery violation did not warrant a mistrial. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-50502

FACTUAL AND PROCEDURAL BACKGROUND

In June 2014, Rhonda Lynn Chesser submitted an application for a passport that included an altered birth certificate with a false date of birth. Chesser claimed an August 26, 1977, birthdate instead of correctly specifying that same date in 1976. A passport specialist identified a likely alteration on the birth certificate and referred the application to a program for addressing potential fraud. After review, additional information was requested from Chesser to confirm her citizenship because the documents she initially provided were not sufficient to support issuance of a passport. Chesser was instructed to fill out a questionnaire and to provide additional documents.

Chesser completed the questionnaire and submitted it along with an affidavit executed by her mentally-impaired sister, Donna Chesser. Both documents again specified the false date of birth. During the investigation, Agents Eric Benn and Matthew Nau interviewed Chesser. Fairly soon after the questioning began, Chesser admitted to the falsification and signed a written statement admitting to falsifying her birthdate on documents submitted in her passport application. During the interview, Chesser stated that when she was growing up, her mother told her she had been born in 1977. At trial, though, one of Chesser's sisters testified that she remembered that Chesser's birthday was in fact on August 26, 1976.

Chesser was charged in the United States District Court for the Western District of Texas with three counts of making false statements in a passport application, violating 18 U.S.C. § 1542. In July 2017, the district court entered a standing discovery order, requiring the Government to give Chesser, among other information, copies of any written statements and summaries of any oral statements that she had made. Prior to trial, Chesser's counsel asked the Government if Agent Nau had prepared a Memorandum of Interview ("MOI")

2

from his October 17, 2014, interview of Chesser.  Counsel answered that no MOI had been prepared after the agents questioned Chesser.  At trial, Chesser's counsel asked Agent Benn if Agent Nau had prepared an MOI. Agent Benn stated, "I think [the Assistant United States Attorney Paulina] Jacobo showed me something that [Agent Nau] had sent — [Agent Nau] had provided to [Jacobo] at some point."

Chesser's counsel later asked Jacobo about the existence of any MOI. Jacobo responded that Jacobo was unaware of and did not possess such a report.  On the night of March 20, 2018, the day the Government had rested its case, Jacobo sent a text message to Chesser's counsel that Agent Nau actually had prepared a memorandum of the interview.  The following morning, Jacobo sent a copy of the MOI to Chesser's counsel.  These events precipitated Chesser's March 21, 2018, motion for a mistrial.  Chesser argued that the MOI was exculpatory, that she had been prejudiced by the discovery violation, and that a hearing needed to be held on her motion.  When court convened that day, the district court judge asked Jacobo to explain her late disclosure of the MOI.  Jacobo assured the court that she had first learned of the MOI the previous day, March 20, 2018, after asking Agent Nau about it.

The district court refused to grant a mistrial.  It gave Chesser the option of calling Agent Nau or any other witness to the stand or allowing the Government to reopen its case and call Agent Nau to the stand.  Chesser's counsel opted to call Agent Nau as a witness and questioned him about the MOI.

Chesser was found guilty on all three counts.  This appeal timely followed.

No. 18-50502

DISCUSSION

We review the denial of a motion for mistrial for an abuse of discretion. *United States v. Valles*, 484 F.3d 745, 756 (5th Cir. 2007). We also review "alleged discovery errors for abuse of discretion and will order a new trial only where a defendant demonstrates prejudice to his substantial rights." *United States v. Garcia*, 567 F.3d 721, 734 (5th Cir. 2009). When reviewing claims that the Government violated its duty to disclose exculpatory information to the defense, we apply a *de novo* standard. *United States v. Valas*, 822 F.3d 228, 236 (5th Cir. 2016).

*I.     Brady Violation*

"[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Chesser argues for the application of a test that applies when evidence is suppressed. The Government insists that when evidence was finally if belatedly disclosed during trial, a different standard applies because such evidence is not considered to have been suppressed. *See United States v. Swenson*, 894 F.3d 677, 683 (5th Cir.), *cert. denied*, 139 S. Ct. 469 (2018). When disclosure is late, the analysis focuses on whether the defendant was prejudiced. *See id*. We agree with the Government that there was no suppression here and thus no *Brady* violation. Thus, the latter test applies here.

Chesser was able to utilize the MOI in presenting her case and referred to it in closing argument. Chesser's argument that her trial strategy would have been different had the MOI been disclosed earlier is too speculative to support finding an abuse of discretion in the denial of a mistrial. *See Swenson*, 894 F.3d at 684. The district court fashioned an appropriate remedy that

4

allowed Chesser to use the contested evidence during the trial. She was not prejudiced. Furthermore, any claim of resulting prejudice fails given the weight of the evidence demonstrating Chesser's guilt. *See United States v. Cochran*, 697 F.2d 600, 606–07 (5th Cir. 1983).

## II.    *Rule 16 Violation*

Under Federal Rule of Criminal Procedure 16(a)(1)(B), the Government was required to disclose the MOI to Chesser upon request. It failed to do so until mid-trial. The district court has wide discretion when determining what sanctions, if any, to impose for a Rule 16 violation. *See United States v. Dvorin*, 817 F.3d 438, 453 (5th Cir. 2016). The court should impose the least severe sanction that it believes will cure the violation. *United States v. Bentley*, 875 F.2d 1114, 1118 (5th Cir. 1989). Generally, declaring a mistrial is not appropriate absent bad faith or an intentional failure to disclose: "a district court will not impose severe sanctions, like suppression of evidence, where the government's discovery violations were not committed in bad faith." *Dvorin*, 817 F.3d at 453. There is no evidence here to support Chesser's argument that the MOI was willfully suppressed by the prosecution.

Though we affirm the conviction, we reiterate that the Government's obligation to comply with all discovery rules is one of great consequence. We have already discussed a defendant's right under *Brady* to disclosure of all material evidence of an exculpatory nature. "The constitution requires the prosecution to observe this right with vigilance." *United States v. Garrett*, 238 F.3d 293, 302 n.2 (5th Cir. 2000) (Fish, J., concurring) (alteration omitted) (quoting *United States v. Washington*, 669 F. Supp. 1447, 1451 (N.D. Ind. 1987)). A related imperative is that the Government honor a defendant's right to inspect her own relevant statement, and any written record of it, when it is

No. 18-50502

within the Government's possession, custody, or control. FED. R. CRIM. P. 16(a)(1)(B)(i)–(ii). Accordingly, upon a defendant's request, the Government must exercise due diligence in obtaining and producing such statements. *See* FED. R. CRIM. P. 16(a)(1)(B).

We are satisfied that the Government's failure to disclose was not intentional. Nonetheless, with the advent of technological advances in data storage, information management, and digital banks of records compiled by the Government, it should not ordinarily be an arduous task for the Government to diligently and carefully search for and locate documents within the Government's possession. In view of that, we urge the Government to utilize whatever resources it has at its disposal in fulfilling its duty to disclose.

AFFIRMED.