# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
May 15, 2026

Lyle W. Cayce
Clerk

No. 25-20002

_____

United States of America,

*Plaintiff—Appellant*,

*versus*

Sade Kuyoro,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CR-222-2

_____

Before Haynes, Higginson, and Ho, *Circuit Judges*.

Stephen A. Higginson, *Circuit Judge*:

The Government charged Sade Kuyoro with disaster relief fraud and wire fraud following FEMA's award of approximately $33,000 to Kuyoro after Hurricane Harvey. During trial, the Government discovered it had failed to disclose two pieces of evidence to the defense: (1) civil recoupment letters mailed to Kuyoro in 2020, and (2) an email to a third-party contractor who purportedly inspected the damaged property before FEMA awarded Kuyoro disaster relief. Kuyoro moved to dismiss the indictment on the basis that the late disclosures violated *Brady v. Maryland*, 373 U.S. 83 (1963), and the district court dismissed the indictment without prejudice. We

No. 25-20002

REVERSE the dismissal order and REMAND the case with instructions that the indictment be reinstated.[1]

I

In the aftermath of Hurricane Harvey in 2017, Sade Kuyoro filed a FEMA disaster relief application claiming that her home, located at 5666 Howell Street, Unit C, in Houston, Texas, had sustained hurricane damage. To support her application, Kuyoro provided documentation indicating that she supported two dependents, a hotel receipt for a portion of the time she was allegedly displaced from her home, an automotive repair shop estimate for a vehicle allegedly damaged in the hurricane, a utility bill for 5666 Howell Street, and a utility bill for a rental property she allegedly lived in while displaced. Based on Kuyoro's representations, FEMA provided her with $33,000 in disaster relief funds.

After an investigation, the Government determined that Kuyoro's application was fraudulent. The United States charged Kuyoro with one count of disaster fraud in violation of 18 U.S.C. § 1040(a)(1) and two counts of wire fraud in violation of 18 U.S.C. § 1343. Kuyoro pleaded not guilty and proceeded to trial.

A. The Government's Case in Chief

At trial, the Government presented evidence that the Howell Street residence listed in Kuyoro's FEMA application had been fabricated. Delfina Gutierrez testified that she had lived at 5666 Howell Street for 20 years and that no "Unit C" had ever existed. Gutierrez stated that 5666 Howell Street sustained minimal damage from the hurricane. She further testified that she did not know Kuyoro.

_____

[1] Kuyoro's motion to supplement the record on appeal is GRANTED.

No. 25-20002

The Government also presented evidence that Kuyoro never lived in Houston. Kuyoro certified in a 2018 Illinois bankruptcy petition that, in the prior three years (including during Hurricane Harvey in August 2017), she had never lived anywhere other than Illinois. Investigators also located Kuyoro's Illinois driver's license, which was valid and registered to an Illinois address during the time she sought FEMA damage relief for the Howell Street property. She had used this license to open a post office box in Houston, which she designated as her mailing address on the FEMA application.

The Government introduced additional evidence demonstrating that the documentation Kuyoro filed in support of her application was fraudulent. First, the hotel that Kuyoro claimed she resided at while displaced by the hurricane damage confirmed that Kuyoro never stayed there. Second, the automotive repair shop which supposedly estimated the hurricane damage to Kuyoro's car attested that it had never issued such an estimate. Third, the apartment Kuyoro listed as one of the places she lived while displaced by hurricane damage did not exist. And, lastly, Kuyoro's 2018 Illinois bankruptcy reflected that she had no dependents.

Finally, the Government presented evidence calling into question whether the FEMA inspection—allegedly conducted on the Howell Street property in support of the relief application—ever occurred. On September 28, 2017, the day before FEMA's inspection was scheduled, Kuyoro called FEMA to report that her damaged home had been demolished. Despite this, Kuyoro's FEMA application and inspection report reflect that 5666 Howell Street, Unit C, was inspected on September 29, 2017.

Kuyoro's main defense at trial was to highlight that, although there was evidence showing an inspection occurred at the Howell Street property

and that the inspector met with Kuyoro, the absence of the inspector at trial was a major flaw in the Government's case.

### B. The Allegedly Withheld Evidence

The Government elicited testimony from two witnesses that prompted the discovery of the allegedly withheld evidence in this case: (1) civil recoupment letters mailed to Kuyoro in 2020, and (2) an email to a third-party contractor who purportedly inspected the damaged property before FEMA awarded Kuyoro disaster relief.

As to the first piece of withheld evidence, Pamela Glasschroeder, a FEMA representative, testified about FEMA's procedures for processing relief applications, explaining that, after a person applied for FEMA relief, third-party contractors inspect the relevant property. These inspectors sometimes take photographs of the damaged property during the inspection but do not upload or include them in the applicant's FEMA file. Sometimes inspectors rely on the applicant's representation of the property damage as conveyed over the phone. Inspectors then produce a final investigation report representing the total loss to the property.

During cross-examination, defense counsel asked Glasschroeder whether FEMA had sought to recoup any of the funds it paid to Kuyoro, and if so, how much. Glasschroeder said that someone from FEMA had asked for the money back, but she was unsure of the amount sought. *Id.* Prompted by Glasschroeder's testimony, Agent Mickey Johnson, a Special Agent with the Department of Homeland Security and Office of Inspector General, searched the FEMA database and located two civil recoupment letters that FEMA had mailed to Kuyoro in 2020 which had not been disclosed to the defense.

The Government immediately disclosed the recoupment letters to defense counsel. The Government explained to the district court that it had

inadvertently failed to disclose the 2020 letters because they were created after FEMA provided prosecutors with Kuyoro's file in 2019, which was the same file shared with defense. It further explained that, a few days before trial, the Government gave defense counsel emails between Agent Johnson and a FEMA accounting technician about civil recoupment efforts made in Kuyoro's case, which showed Kuyoro had not repaid any funds.

Defense counsel argued that the late disclosure of these letters impeded counsel's ability to thoroughly cross-examine Agent Johnson, who had not yet testified. The defense also argued that the late disclosure violated the Government's disclosure obligations under *Brady v. Maryland* because the Government was in possession of the favorable, material letters but did not disclose them in response to Kuyoro's discovery requests. The district court allowed the trial to proceed but first gave the defense time to review the letters prior to Agent Johnson's testimony.

The second piece of withheld evidence came to light during the testimony of Agent Johnson. Agent Johnson testified about his criminal investigation into Kuyoro and his review of her FEMA file. When the prosecutor asked whether Agent Johnson had ever attempted to contact the FEMA inspector, Agent Johnson testified that he had attempted to do so, but he had never received a response.

After his testimony, Agent Johnson searched his "sent" email inbox and located a copy of his unanswered email to the inspector, which the Government had not previously disclosed. The Government immediately turned this email over to the defense. But the defense objected, arguing that this late disclosure violated *Brady* because the inspector could have been an exculpatory witness, and the defense was otherwise unaware of the inspector's identity and contact information.

No. 25-20002

Kuyoro then moved to dismiss the indictment, or alternatively, for a mistrial. She did not put on a defense and moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. The court reserved ruling on the motion to dismiss. It then ordered the Government to respond to the defense's motion to dismiss by the following morning.

## C. The District Court's Dismissal

The next day, in an oral ruling, the court dismissed the indictment without prejudice as a "sanction." The court focused its concern on the second issue relating to the nondisclosure of Agent Johnson's attempt to contact the FEMA inspector. The court noted that the problem with the nondisclosure was that "it did not afford the defendant an opportunity to make [the] determination" of whether the inspector would be essential to the defense's case. The court explained that, "looking at what *Brady* requires," the Government should have turned over the evidence to the defense. However, the court also acknowledged that it could not determine whether the testimony of the inspector would have been favorable to the defendant, since any information the inspector would share was "unknown."

The district court dismissed the indictment, but it did not clearly specify on which grounds—*Brady*, Federal Rule of Criminal Procedure 16, or its supervisory authority. The district court focused on two recent cases before it, during which the Government had committed discovery violations. In emphasizing the violations in the other cases, the district court explained that, "standing alone," the failures in this case "may not rise to the level of having this case mistried or dismissed." The court explicitly found "no malicious or nefarious intent" by the prosecutors in Kuyoro's case. However, the court stated that, although "these particular violations [alone] could be dealt with through . . . a continuance . . . . taken as a whole with the prior two cases," dismissal of the indictment without prejudice in Kuyoro's

6

case seemed to the district court the appropriate remedy. The court cited its inherent supervisory powers to "implement a remedy for violation of a recognized statutory or constitutional right," "to preserve judicial integrity," and "to deter future illegal conduct."

The Government then moved for reconsideration. Following a hearing, the district court denied the Government's motion and reaffirmed its decision to dismiss the indictment without prejudice pursuant to its supervisory powers. The Government timely appealed.

## II

We have jurisdiction over this appeal pursuant to 18 U.S.C. § 3731. We review whether the Government violated *Brady de novo*, although we defer to the district court's factual findings. *United States v. Brown*, 650 F.3d 581, 589 (5th Cir. 2011). We review the district court's interpretation of Rule 16 *de novo*. *United States v. Brown*, 303 F.3d 582, 589 (5th Cir. 2002). "We review remedies for discovery violations imposed by a district court for abuse of discretion." *United States v. Katz*, 178 F.3d 368, 372 (5th Cir. 1999).

## III

The Government argues that the district court abused its discretion in dismissing the indictment because the late disclosures of the recoupment letters and the information pertaining to the inspector did not violate *Brady* or Rule 16. Alternatively, the Government argues that, regardless of whether the dismissal was pursuant to the court's supervisory powers, Rule 16, or *Brady*, the district court abused its discretion in failing to conduct the required prejudice analysis and failing to weigh the factors enumerated in

*United States v. Garrett*, 238 F.3d 293 (5th Cir. 2000), when it determined an appropriate sanction.

We address each potential basis for the district court's dismissal in turn.

## A

"To establish a *Brady* violation, a defendant must show: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or impeaching; (2) the evidence was suppressed by the prosecution; and (3) the evidence was material." *United States v. Cessa*, 861 F.3d 121, 128 (5th Cir. 2017) (quoting *United States v. Dvorin*, 817 F.3d 438, 450 (5th Cir. 2016)). But, under *Brady*, the Government "bears no responsibility to direct the defense toward potentially exculpatory evidence that is either known to the defendant or that could be discovered through the exercise of reasonable diligence." *United States v. Sipe*, 388 F.3d 471, 478 (5th Cir. 2004).

When evidence is turned over to the defense during trial, such that the defense challenges the late production—rather than non-production—of the evidence, "the analysis instead turns on whether the defendant was prejudiced by the tardy disclosure." *United States v. Morrison*, 833 F.3d 491, 508 (5th Cir. 2016). "If the defendant received the material in time to put it to effective use at trial, his conviction should not be reversed simply because it was not disclosed as early as it might have and, indeed, should have been." *United States v. McKinney*, 758 F.2d 1036, 1050 (5th Cir. 1985). If a defendant cannot show prejudice from the late disclosure, the evidence is not suppressed under *Brady*. *See United States v. Swenson*, 894 F.3d 677, 683–84 (5th Cir. 2018).

Neither the civil recoupment letters nor the information about the FEMA-contracted inspector were suppressed under *Brady*.

First, because Kuyoro cannot show that she was prejudiced by the Government's late disclosure of the recoupment letters, her *Brady* argument fails. *See id.* Defense counsel received the letters before Agent Johnson testified, and the district court gave counsel time to review them prior to counsel's cross-examination. To "cure the issue," the Government agreed it would not object to any argument or questioning about whether the Government had "failed to provide any kind of evidence that there were recoupment efforts made." And the district court remarked "it did not see how this has harmed the defense."

Kuyoro argues the late disclosure of the letters was prejudicial because counsel "was forced to drop" the line of questioning about whether FEMA ever sought return of disaster relief funds, and prior to discovering the letters, the defense had no evidence that FEMA sought repayment of the funds from Kuyoro. Even if so, Kuyoro fails to explain how these concerns amount to prejudice. Kuyoro does not explain why the recoupment letters bear on any defense to disaster or wire fraud. Further, counsel already possessed evidence that Kuyoro had not repaid any funds to FEMA. Because Kuyoro received the letters in time to "put [them] to effective use" at trial, and has otherwise failed to demonstrate prejudice, the letters were not violative of *Brady*. *See McKinney*, 758 F.2d at 1050.

Second, the evidence relating to the FEMA inspector was not suppressed under *Brady* because Kuyoro could have obtained the information about the FEMA inspector with the exercise of reasonable diligence. This is because "*Brady* does not oblige the government to provide the defendants with evidence that they could obtain from other sources by exercising reasonable diligence," and "defendants must bear the responsibility of their failure to diligently seek its discovery." *United States v. McKenzie*, 768 F.2d 602, 608 (5th Cir. 1985); *see also West v. Johnson*, 92 F.3d 1385, 1399 (5th Cir. 1996).

No. 25-20002

For one, there is no meaningful dispute that Kuyoro knew about the inspector such that she could have sought to obtain more information about him for use at trial. Counsel for Kuyoro elicited testimony from witnesses to argue affirmatively that a real inspection took place at the Howell Street property and that Kuyoro met with the inspector. Kuyoro therefore purported to have sufficient knowledge of the inspection that would permit her to seek the identity of the inspector and any information in his possession for use at trial if she so chose. *See Rector v. Johnson*, 120 F.3d 551, 560 (5th Cir. 1997) (reasoning that the defendant, "better than anyone else, knew [the witnesses's] whereabouts on the night" of the crime such that the government did not suppress a store clerk's statement that supported the defendant's alibi).

Further, counsel had access to the inspection report and the contracted inspector's FEMA identification number well in advance of trial. Kuyoro represents that counsel "attempted to identify the inspector before trial but was unable," but she fails to explain why, with the exercise of reasonable diligence, she could not have subpoenaed the inspector to learn his identity or pursued other avenues to contact the inspector.

We have rejected a similar argument before. In *United States v. Sipe*, the defendant argued that the government suppressed notes of an interview conducted with a classmate of the defendant who was not called as a witness at trial. 388 F.3d at 486. The notes were not "suppressed" under *Brady* because the defendant could have exercised reasonable effort to contact the witness himself and determine whether he wanted to call him at trial. *Id.* at 487; *see also United States v. Vasquez-Hernandez*, 924 F.3d 164, 171 (5th Cir. 2019) (holding no *Brady* violation when the government failed to disclose the location of the defendant's children because defendant could have subpoenaed them, called them as witnesses, or sought other information to use at trial).

No. 25-20002

Circuit courts across the country similarly distinguish *Brady* claims involving witnesses and other materials about which defendants knew and failed to investigate further themselves. *See, e.g.*, *United States v. Stein*, 846 F.3d 1135, 1146 (11th Cir. 2017) (rejecting the argument that a publicly available Securities and Exchange Commission document, revealing the name of a potentially relevant witness, was *Brady* material because the defendant failed to show that he was unable to locate the document and relevant evidence with reasonable diligence); *United States v. LeRoy*, 687 F.2d 610, 618–19 (2d Cir. 1982) (finding no *Brady* violation when defendant knew of the witnesses' identity and could have subpoenaed the witnesses to testify at trial); *Cunningham v. Wong*, 704 F.3d 1143, 1154 (9th Cir. 2013) (rejecting argument that autopsy report was suppressed because attorneys knew that the autopsy had transpired and could have sought the report through the discovery process); *United States v. Edwards*, 34 F.4th 570, 587 (7th Cir. 2022) (explaining that, although the government should have produced a report about a witness's prior statement, "anything [the defendant] would have gained from it was available to him through reasonable diligence" because it concerned the defendant's own favorable witness).

We find these cases persuasive. Kuyoro cannot claim suppression under *Brady* when she knew of the inspector's existence and failed to exercise reasonable diligence to obtain further information about the inspector or to call him at trial. Because we find no suppression, we need not address the favorability and materiality prongs. *See Swenson*, 894 F.3d at 683.

\*    \*    \*

Given that we find no *Brady* violation, to the extent the district court dismissed the indictment on this ground, the district court erred.

11

B

Rule 16(a)(1)(E) provides that, upon a defendant's request, the Government must permit the defendant to "inspect and to copy" evidence that is "material to preparing the defense," or evidence that "the government intends to use . . . in its case-in-chief at trial." FED. R. CRIM. P. 16(a)(1)(E). When a party fails to comply with a provision of Rule 16, the district court may "order that party to permit the discovery or inspection," "grant a continuance," "prohibit that party from introducing the undisclosed evidence," or "enter any other order that is just under the circumstances." FED. R. CRIM. P. 16(d)(2).

We have explained that district courts, in exercising their discretion to impose sanctions for statutory and rule-based discovery violations, should consider the following factors: "1) the reasons why disclosure was not made; 2) the amount of prejudice to the opposing party; 3) the feasibility of curing such prejudice with a continuance of the trial; and 4) any other relevant circumstances." *Garrett*, 238 F.3d at 298; *see also United States v. Sarcinelli*, 667 F.2d 5, 6–7 (5th Cir. 1982). Courts "should impose the least severe sanction that will accomplish the desired result—prompt and full compliance with the court's discovery orders." *Garrett*, 238 F.3d at 298 (quoting *Sarcinelli*, 667 F.2d at 7).

Assuming *arguendo* that the late disclosures violated Rule 16, the district court did not expressly consider the *Garrett* factors before dismissing the indictment without prejudice. *See Swenson*, 894 F.3d at 684. The record reveals that the district court heard argument from counsel concerning the discovery violations, questioned the Government about the reasons for the nondisclosures, and found "no malicious or nefarious intent" underlying the prosecutors' actions. While the district court heard counsel's argument about the prejudice to Kuyoro, it made no finding of prejudice. The court also

mentioned that, "[t]aken by itself, [the] particular violations could be dealt with through . . . a continuance of [the] case," but it focused on the two instances of discovery violations in *other* cases, which had resulted in a warning issued to prosecutors that any more misconduct could result in future dismissals. The district court focused on these other cases to the exclusion of the considerations required under *Garrett*.

To the extent we can assess the court's remarks under the *Garrett* factors, the district court failed to impose the least severe sanction that would remedy any discovery violations. Under Rule 16(d)(2), sanctions must be the least severe to accomplish compliance with the court's discovery orders. *See Sarcinelli*, 667 F.2d at 7. Although the court noted a continuance would remedy the alleged violations in this case, it declined to continue the case or impose another, less severe sanction. The district court abused its discretion in failing to consider the *Garrett* factors and, otherwise, in imposing a more severe sanction[2] than necessary to cure any Rule 16 violation in Kuyoro's case.

## C

The district court invoked its supervisory powers when it dismissed the indictment and denied the Government's motion for reconsideration.

The Government argues that, even if the dismissal was pursuant to the court's supervisory powers rather than tailored to any *Brady* or Rule 16 violation, the sanction was still an abuse of discretion because Kuyoro cannot show she was prejudiced by the late disclosed evidence. Notably, Kuyoro

---

[2] We note that a dismissal without prejudice, though less severe than a dismissal with prejudice, imposes greater hardship on the Government as a sanction than a continuance. *See United States v. Taylor*, 487 U.S. 326, 342 (1988) (explaining that a dismissal of an indictment without prejudice "is not a toothless sanction" because the Government must reindict).

does not raise the court's exercise of its supervisory powers as an independent basis for dismissal,[3] but she argues that the court's dismissal was proper as a remedy "for the violation of a recognized statutory or constitutional right" and that the late disclosures were nonetheless prejudicial to her.

Federal courts may exercise their supervisory authority to "formulate procedural rules not specifically required by the Constitution or the Congress," but such exercise is invalid if it conflicts with constitutional or statutory provisions. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988) (internal quotation marks and citation omitted). The purposes of a court's supervisory powers are to "1) implement a remedy for a violation of a recognized right, 2) to preserve judicial integrity by [e]nsuring that the conviction rests on appropriate consideration validly before the jury[,] and 3) as a remedy designed to deter further illegal conduct." *United States v. Ornelas-Rodriguez*, 12 F.3d 1339, 1349 (5th Cir. 1994). A district court exceeds its supervisory powers when it dismisses "an indictment for prosecutorial misconduct not prejudicial to the defendant" in line with Federal Rule of Criminal Procedure 52(a). *Bank of Nova Scotia*, 487 U.S. at 255; *see also Swenson*, 894 F.3d at 685.

It is clear that the district court never conducted the required prejudice analysis, and Kuyoro has not shown any actual prejudice by the late-disclosed evidence. *Swenson*, 894 F.3d at 685. As explained above, Kuyoro was not prejudiced by the late disclosure of the recoupment letters

---

[3] Therefore, Kuyoro has forfeited any argument that the district court's dismissal was appropriately fashioned as a supervisory power "remedy designed to deter further illegal conduct." *United States v. Hasting*, 461 U.S. 499, 505 (1983); *see Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) (explaining that a party forfeits an argument by failing to raise the argument below or failing to adequately brief the argument on appeal).

because she received the letters during trial and was given time to implement the evidence in advance of her cross-examination.[4] As to the inspector information, defense counsel was aware of the absence of the inspector's testimony and chose to use this as a theory to challenge the Government's case at trial. Counsel also had access to information about the inspector that, for the reasons explained above, and with the exercise of reasonable diligence, he could have used at trial. Despite this, even if the late disclosure of the inspector email prejudiced Kuyoro in some way, she fails to adequately explain why a continuance of the trial would not have remedied any prejudice. Nor does she explain why the dismissal without prejudice was an appropriately tailored sanction for any discovery violation in this case. *See id.* at 685–86. Kuyoro has not demonstrated prejudice sufficient to support the district court's sanction.[5]

## IV

The district court abused its discretion when it dismissed Kuyoro's indictment without prejudice. Accordingly, as the Government requests, we

---

[4] Indeed, the district court noted that the "instance" involving the recoupment letters "was cured immediately in that approximately six pages were provided to defense mid-trial."

[5] As our court said in *Swenson*, we decline "to 'foreclose the possibility that governmental ineptitude and carelessness could be so abhorrent as to warrant a dismissal with prejudice,'" or even a dismissal without prejudice as the court imposed here. 894 F.3d at 685 (quoting *United States v. Fulmer*, 722 F.2d 1192, 1196 (5th Cir. 1983)). But we have explained that "mere error or oversight is neither gross negligence nor intentional misconduct" to constitute prosecutorial misconduct. *Fulmer*, 722 F.2d at 1195 (internal quotation marks and citation omitted); *see also United States v. Strouse*, 286 F.3d 767, 771–76 (5th Cir. 2002) (explaining why, in the grand jury context, supervisory power dismissal must be sourced in a finding of intentional governmental misconduct). The district court explicitly stated that it found "no malicious or nefarious intent" underlying the prosecutors' actions.

No. 25-20002

REVERSE the order of the district court dismissing the indictment and REMAND the case with instructions to reinstate the indictment.